IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATALA S. STROMAN, )<br><br>    Plaintiff, )<br><br>      vs. )<br><br>BANK OF AMERICA CORPORATION, )<br>BANK OF AMERICA, N.A., BAC HOME )<br>LOANS SERVICING, LP *(a subsidiary of* )<br>*Bank of America, N.A. and formerly known* )<br>*as Countrywide Home Loans Servicing, L.P.)* )<br>EQUIFAX CREDIT INFORMATION )<br>INFORMATION  SERVICES, INC., )<br>EXPERIAN SOLUTIONS, INC., TRANS )<br>UNION LLC AND ABC CORPORATIONS 1-3, )<br><br>    Defendants. )<br>_____ ) | Civil Action<br>File No.: _____ |

## COMPLAINT FOR DAMAGES, INJUNCTIVE,
## DECLARATORY AND EQUITABLE RELIEF

COMES NOW Plaintiff, **NATALA S. STROMAN**, by and through the undersigned counsel of record, and brings this, her *Complaint for Damages, Injunctive, Declaratory and Equitable Relief* against Defendants **BANK OF AMERICA CORPORATION** ["**BOAC**"], **BANK OF AMERICA, N.A.** ["**BOA**"], **BAC HOME LOANS SERVICING, LP** *(a subsidiary of Bank of America, N.A., and formerly known as/successor in interest to, Countrywide Home Loans Servicing, L.P.)*["**BAC**"](collectively referred to as the "BOA Defendants"), **EQUIFAX CREDIT INFORMATION SOLUTIONS, INC.** ["**Equifax**"], **EXPERIAN INFORMATION SOLUTIONS, INC.** ["**Experian**"], **TRANS**

**UNION LLC** ["**Trans Union**"] and **ABC CORPORATIONS 1-3** and shows as follows:[1]

## I     <u>PRELIMINARY STATEMENT</u>

To the extent permissible and or necessary, this action is brought pursuant to F.R.C.P. 8 (d) and in conjunction therewith, each allegation is plead in the aggregate and Plaintiff reserves the right to pursue alternative and [if necessary] inconsistent theories of recovery and or to seek alternate remedies in order to obtain full and complete relief.[2]

## II     <u>PARTIES, SERVICE, VENUE AND JURISDICTION</u>

1.

Plaintiff **Natala S. Stroman** is an individual natural person, United States citizen and resident of the State of Georgia, County of Henry, situated in the Northern District of Georgia.

---

[1]     Because numerous documents relevant to this action received by Plaintiff from Defendant(s) contain ambiguous references to "Bank of America", "BAC Home Loans Servicing", etc., Plaintiff cannot yet be certain exactly which entity(s) committed the wrongs as identified herein and which, therefore, are [or are not] proper party Defendants. *See, e.g*., **12/31/09** email to Plaintiff from "Kelly R.", a BOA representative, wherein she states in response to Plaintiff's QWR specifically inquiring about the issue, that "**Bank of America has many different entities that are all under the same umbrella of Bank of America, however each department is separate**". In fact most of the letters received by the BOA Defendants state at the bottom, "**This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.**". *See also* **07/07/10** letter from BOA attached as Exhibit "**AA**". Accordingly, reference to the "BOA Defendants" shall, unless otherwise indicated, mean whichever entity(s) is later determined, through discovery, to have been the legal entity(s) that acted or failed to act, as applicable or necessary.

[2]     Plaintiff is mindful of the "catch-22" presented by competing theories and opinions as to the level of detail to be included in a Complaint and notes that issue "is widely debated among practitioners". *See, e.g.*, *Federal Civil Rules Handbook*, Baicker-McKee, at 287. To that end, Plaintiff has attempted to balance the need for specificity against other considerations.

2.

Defendant **Bank of America Corporation** is, according to the records of the Georgia Secretary of State's Office, a foreign for-profit corporation headquartered in the state of **Delaware**, with its Principle Office located at 401 N. Tryon St., NC1-021-02-20, Charlotte, **North Carolina** 28255. BOCA is, upon information and belief, authorized to conduct and transact business in Georgia and may be served with process via its Registered Agent, C.T. Corporation/Shakinah Edwards, at 1201 Peachtree St., NE, Atlanta, Fulton County, GA 30361. Alternatively, BOAC may be served via one of its officers agents or employees or otherwise in accordance with law. *See, e.g.*, O.C.G.A. §§ 9-11-4, 9-10-90, 14-2-504, 14-2-140 and *American Photocopy v. Deadmore*, 127 Ga. App. 207 (1972).

3.

Defendant **Bank of America, N.A.** is, upon information and belief a foreign for-profit corporation headquartered in the state of **Delaware**, with its Principle Office located at 401 N. Tryon St., NC1-021-02-20, Charlotte, **North Carolina** 28255. BAC is, according to the [lack of] records of the Georgia Secretary of State's Office, *not* expressly authorized to conduct and transact business in Georgia and thus may be served with process by serving one of its officers agents or employees or otherwise in accordance with law. *Id.* Upon information and belief, BOAC is the holding company for BOA.

4.

Defendant **BAC HOME LOANS SERVICING, LP** *(a subsidiary of Bank of America, N.A. and formerly known as/successor in interest to, Countrywide Home Loans Servicing, L.P.)* is, upon information and belief, a foreign for-profit corporation headquartered in the state of **Delaware**, with its Principle Office located at 401 N. Tryon St., NC1-021-02-20, Charlotte, **North Carolina** 28255. BAC is, according to the [lack of] records of the Georgia Secretary of State's Office, *not* specifically authorized to conduct and transact business in Georgia and thus may be served with process by serving one of its officers agents or employees or otherwise in accordance with law. *Id*.

5.

Defendant **Equifax** is - upon information and belief and according to the records of the Georgia Secretary of State's Office - a domestic for-profit corporation organized and existing pursuant to **Georgia** law and with its Principle Office address located at 1550 Peachtree St., N.E., Atlanta, GA, Fulton County, Georgia 30309 and may be served with process, among alternative methods, via its Registered Agent, Kent E. Mast, at 1550 Peachtree St., SW, Atlanta, Georgia 30309.

6.

Defendant **Experian** is - upon information and belief and according to the records of the Georgia Secretary of State's Office - a foreign for-profit corporation,

headquartered in the state of **Ohio** with its Principle Office located at 475 Anton Blvd., Costa Mesa, **California** 92626-7037 and may be served with process, among alternative methods, via its Registered Agent, C.T. Corporation at 1201 Peachtree St., NE, Atlanta, Fulton County, Georgia 30361.

7.

Defendant **Trans Union** is - upon information and belief and according to the records of the Georgia Secretary of State's Office - a foreign limited liability company, headquartered or created in the state of **Delaware**, with its Principle Office located at 555 W. Adams St., Chicago, **Illinois** 60661, and may be served with process, among alternative methods, via its Registered Agent, Prentice-Hall Corp. Systems at 40 Technology Pkwy South, #300, Norcross, Gwinnett County, Georgia 30092.

8.

Defendants **ABC Corporations 1-3** have been named as Defendants in this action due to the fact that, upon information and belief, Plaintiff's loan - or the ownership interest therein - has been securitized by the original lender and sold or otherwise transferred as a Mortgage Backed Security (MBS) or otherwise "pooled" along with numerous other loans to one or more entities whose identities are currently unknown.

9.

The out-of-state/foreign corporate Defendants are subject to the personal

jurisdiction of this Court by virtue of their affirmative, purposeful and persistent [substantial] contacts with Plaintiff and other citizens of Georgia in conjunction with their commercial for-profit business endeavors such that the exercise of personal jurisdiction over them here would "not offend traditional notions of substantial justice and fair play". *See, e.g. International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945).

10.

Federal subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C.A. § 1331. As demonstrated herein, this case involves issues/claims "arising under the Constitution, laws, or treaties of the United States" (i.e. Federal law). These include, for example, the *Real Estate Settlement Procedures Act* ("RESPA")[12 U.S.C. § 2601 *et seq.*], the *Home Affordable Modification Program ("HAMP")[see* Emergency Economic Stabilization Act of 2008 ("ESSA"), Pub. L. No. 110-343, § 101, 122 Stat. 3765 (October 3, 2008), the *Truth in Lending Act* ("TILA"), the *Fair Credit Reporting Act* ("FCRA") and the *Fair Debt Collection Practices Act* ("FDCPA"), all of which clearly predominate over any ancillary or secondary state law claims. *See, e.g.,* 15 U.S.C. § 1681(p) ["An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction"] and 15 U.S.C. § 1692(d) ["An action to

enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction…"].

### 11.

Alternatively or additionally, federal jurisdiction is proper in this Court pursuant to 28 U.S.C.A. § 1332, as one or more parties to this case are citizens of different states. Specifically, as noted above, Plaintiff is a resident of the state of Georgia, while one or more of the named Defendants are citizens of other states as defined by § 1332 (c)(1), and the amount in controversy, excluding costs and interest, exceeds $75,000.00.

### 12.

This Court has proper pendant, ancillary and or supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.A. § 1367 [i.e. "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…"], as such "other" claims are "so related" and do not substantially predominate over the Federal law claims.

### 13.

Venue in this Court is proper pursuant to 28 U.S.C.A. § 1391 (a)(2) and or (3) by virtue of the fact that "a substantial part of the events or omissions giving

rise to the claim occurred" in the Northern District of Georgia, and the property at issue is also situated there.

14.

Additionally or alternatively, venue in this Court is proper pursuant to 28 U.S.C.A. § 1391 (b)(2) and or (3) by virtue of the aforementioned facts and as otherwise detailed herein.

**III     INTRODUCTION, FACTS AND BACKGROUND**

15.

On or about **January 31, 2008**, Plaintiff originally obtained a mortgage loan [identified as **Loan #: XXXXX49708**] from/with Quicken Loans (the "originator") for the purchase [re-finance] of real and improved property (sometimes referred to as "the Property") - i.e. a home, to serve as her principal residence - more specifically described as and located at **154 Ashlyn Dr., Hampton, GA 30228**. The transaction involved the issuance of a *Security Deed* and *Note* in connection with the loan.

The closing costs (settlement charges) associated with the new re-financed loan from Quicken totaled **$9,290.54**, and it carried an interest rate of 5.99% for a thirty (30) year fixed rate, with interest only payments for the first ten (10) years. On or about **April 1, 2008**, approximately two (2) months later, the servicing for said loan was transferred to Countrywide Home Loans Servicing, L.P. [then identified as **Loan #: XXXX76139**]. Thereafter, the servicing for the loan was then

transferred yet again to BAC, effective **May 1, 2009**.[3]

16.

The BOA Defendants - and Defendant BAC in particular - is a loan "servicer" of Plaintiff's loan at issue, which is a "federally related mortgage loan" as the terms is defined in RESPA.

17.

At all times relevant to this action, Plaintiff has tendered, and the BOA Defendants or its predecessors have received, timely - as defined by *all* Defendants - payment(s) in full [for each installment due per her the applicable contract(s)] in connection with her loan.

18.

In addition to the rather onerous terms of the original loan at issue, at some or all times relevant to this *Complaint* and as a result of economic conditions - most of which are beyond the scope of this *Complaint* [but of which Plaintiff requests that the Court take judicial notice] - the U.S. experienced a rather sudden and unexpected depression of the real estate market and other widespread financial troubles, such as job losses, income reductions, etc. And this general downturn in the economy contributed to Plaintiff's financial hardship. *See Hardship Affidavit* submitted by

---

[3] Plaintiff does not recall receiving any notice of transfer or any other notice pertaining to BAC's assumption of the servicing of her loan from Countrywide and does not have any evidence in her possession as to same. Nor has BOA/BAC produced any such documentation despite Plaintiff's multiple QWR's directed to them/it seeking, among other evidence, any such documentation.

Plaintiff in conjunction with HAMP Modification.

19.

Plaintiff utilized Fannie Mae's online "Loan Lookup" tool to confirm that her loan was indeed backed or owned by it - i.e. a "GSE" loan. *See* "screenshot" attached hereto as Exhibit "**A**". *See also* **07/07/10** letter from BOA attached as Exhibit "**AA**".[4]

20.

According to Fannie Mae's Servicing Guide *Announcement 09-05 R* **April 21, 2009** ("*Reissuance of the Introduction of the Home Affordable Modification Program, HomeSaver Forbearance, and New Workout Hierarchy"*)[hereafter, "*Announcement*"],

> On February 18, 2009, President Obama announced the Homeowner Affordability and Stability Plan to help up to 7 to 9 million families restructure or refinance their mortgage loans to avoid foreclosure. As part of this plan, the Treasury Department (Treasury) announced a national modification program aimed at helping 3 to 4 million at-risk homeowners - both those who are in default and those who are at imminent risk of default - by reducing monthly payments to sustainable levels. Treasury issued uniform guidance for loan modifications across the mortgage industry in Supplemental Directive 09-01 on April 6, 2009. This Announcement provides guidance to Fannie Mae servicers for adoption and implementation of the Home Affordable Modification Program (HAMP) for Fannie Mae loans.

---

[4]      Among a plethora of other things, the **07/07/10** letter unequivocally and conclusively establishes that (1) Plaintiff's counsel's **June 20, 2010** letter was a proper QWR, (2) the BOA Defendants have willfully and admittedly failed to adequately respond to at least one of Plaintiff's QWRs, (3) the BOA Defendants did not originate the subject loan, (4) the BOA Defendants do not currently own the loan, (5) Fannie Mae currently owns the loan and (6) the letter is misleading.

*Id*. at 1-2. *See* Exhibit "**B**" attached hereto and available online through Fannie Mae's website at **www.efanniemae.com/sf/guides/ssg/annltrs/pdf/2009/0905.pdf**.

21.

Accordingly, when, in the **summer of 2009**, Plaintiff learned about the Neighborhood Assistance Corporation of America ("NACA") and the [free] assistance it was providing to consumers to help them obtain loan modifications under HAMP [and other programs], she decided to seek its help.

22.

Fortunately, NACA agreed to assist Ms. Stroman and, as a result of the collaboration [she joined the organization and authorized it to act on her behalf and her 'case' was assigned as **File Number XX3742**], she submitted her initial HAMP *Hardship Affidavit* and *Loan Modification Application* to Defendants BOA/BAC in or around the end of **August of 2009**.[5]

23.

On **November 19, 2009**, Plaintiff received an email from Defendant

---

[5]     Again, despite Plaintiff requesting such documentation from the BOA Defendants - and their obligation to provide it in response - there does not appear to be any express indication in the documents provided to her, and or currently in her possession, that the Modification that was sought/granted was issued pursuant to HAMP [there are other similar programs available]. However, after conducting rather extensive research, investigation and analysis, Plaintiff's Counsel believes he has determined that the loan is owned or backed by Fannie Mae ["FM"], which in turn means that BOA/BAC likely entered into a "Participation Agreement" of some kind with FM, resulting in its obligation to offer/issue HAMP Modifications pursuant to and in accordance with the applicable conditions and rules of the program [discussed in more issue below].

BOA/BAC's "Loss Mitigation Department" [presumably the department responsible for coordinating Modifications] wherein it wrote in relevant part, [6]

> We have reviewed the case and ***will* be able to offer a loan modification**. A trial period of 4 months will be required, at the **new PITI payment of $1,234.00 for 12/01/09 through 03/01/10**. If the trial period is successful, New PI: $905.00. **New PITI: $1,234.00**. New UPB: $232,554.16. Deferred principal: $26,997.27. Interest bearing principal: $205,556.88. First payment due with modification documents. Interest rate 3.0% for remaining term of the loan.

*Emphasis supplied.*

24.

On the same day, **November 19, 2009**, Plaintiff responded in writing to Defendant(s) BOA/BAC and stated "Member accepts this proposal. Please mail out all documents for Member to sign ASAP. Thanks. Sent to: **lossmitnaca@bankofamerica.com**".

25.

Thereafter, in **November 2009**, for reasons completely unknown to Plaintiff, without any notice to her, **without her consent** and months before the *Modification Agreement* was even effective, **BOA/BAC** began diverting or placing Plaintiff's monthly mortgage/loan payments in segregated "holding" or diversion account of some kind, and these payments were not accurately and or timely (if at all) credited to Plaintiff's loan account or otherwise reflected correctly in

---

[6] Most if not all such preliminary electronic communications with, by and between BOA/BAC regarding the Modification were transmitted to/from/via NACA and its website, as NACA was acting as Plaintiff's agent.

BOA/BAC's system/records.

26.

Then, after not hearing back from BOA for many months, on or about **March 5, 2010**, Plaintiff wrote to BOA/BAC via email to follow up and requested that it "please provide an update on [her] file and provide the investors (sic) information. Thank you for your cooperation."

27.

Finally on **March 12, 2010** BOA/BAC's Loss Mitigation Department wrote to Plaintiff/NACA via email in response and stated, in relevant part,

> We have reviewed the case and ***are* offering a modification of the loan**. New PI: $781.07, **New PITI: $1202.63**, New UPB: $232,017.49, Interest bearing principal: $176,732.49. The first payment is due with signed modification documents. **1st payment effective date will be 05/01/2010**. An interest rate of 3.00% will be effective for the remaining term of 334 months. *(emphasis supplied)*.

28.

On or about **March 24**, **2010**, after months of communications and negotiations, Plaintiff finally received a letter *dated* **March 12, 2010** - the same date it confirmed the Modification by email as described in the preceding paragraph - from BAC' "Home Retention Division", regarding Plaintiff's loan/mortgage Modification. Enclosed with the letter was a [proposed] *Modification Agreement* (*"Agreement"*), which BAC requested to be executed and returned to it on or before **March 29, 2010**. *See* Exhibits "**C**" and "**D**" attached hereto.

### 29.

According to the "**SUMMARY OF PROPOSED MODIFICATION**" set forth in the **March 12th** letter, the "Current Interest Rate" on Plaintiff's then-existing loan was 5.990%, and the "New Interest Rate" was to be 3.000%. The "Unpaid Principal Balance" was $232,017.48, the "Deferred Principal Balance" was $55,285.66 and the "Interest Bearing Principal Balance" was $176,732.49. *Id.*

### 30.

Further**, the "Effective Date" of the Modification was clearly indicated as 05/01/2010**. And according to the "breakdown" provided, Plaintiff's total "New Monthly Payment" was to be **$1,202.63**, consisting of Principal and Interest ("P&I") in the amount of **$781.07** and "Escrow/Option Ins." [taxes, insurance, etc.] in the amount of **$421.56**. Further, according to the letter, the *Modification Agreement* **will "bring the loan current**…". *Id. See also Loan Modification Agreement* itself ["As of the **1st day of May 2010**…Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.000% from the **1st day of April 2010**…The Borrower promises to make monthly payments of principal and interest of U.S. **$781.07** beginning on the **1st day of May 2010**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full"].

### 31.

On **March 25, 2010**, the day following her receipt of the *Modification*

*Agreement*, Plaintiff signed, had it notarized and, as instructed, returned it along with a money order in the amount of **$1,202.63** made payable to Bank of America/Home Loan Servicing, via Fed Ex [tracking number: **798490953451**]. This was, as noted in the preceding paragraph, the exact amount due as expressly stated by BOA/BAC.

32.

As a result of Plaintiff's having met all conditions contained in the proposed Modification as offered by BOA/BAC [and all other conditions precedent pertaining matters forming the basis of her claims] and having timely tendered the monetary and other consideration to it, and BOA/BAC having notified Plaintiff of its acceptance of the Modification and having begun performance or partially (albeit negligently) performed thereunder and in accordance therewith, it cannot be disputed that the parties had a legally enforceable contractual agreement. *See, e.g.*, letter dated **April 9, 2010** sent by BOA/BAC to Plaintiff wherein it confirmed that it had received the finalized/executed *Modification Agreement* on **March 29, 2010** from Plaintiff and stated that her loan "**will remain in normal servicing**" in the meantime [until the Modification was finalized]. *See* Exhibit "**E**" attached.

33.

Unfortunately, not long after the Modification was approved, finalized and in effect, Plaintiff's dealings and experience with the BOA Defendant became

increasingly strained, and significant problems soon developed with the Defendants' (mis) handling, (mis) management and servicing of Plaintiff's Account the and communications [and or lack thereof] related thereto. In response to these problems, Plaintiff notified - directly, on her own and exclusive of her attorney's correspondence - the BOA Defendants *in writing* at least **seventeen (17)** times in an effort to have the accounting, Credit Reporting and various other errors and problems corrected and resolved, each of which constituted a Qualified Written Request ("QWR") under RESPA as described below. And these attempts are exclusive of those made by her verbally/telephonically and those made in writing by her attorney.

As just one example, on **April 1, 2010** Plaintiff sent a QWR and Notice of Billing Error [letter], via Certified U.S. Mail, to Defendant BOA complaining about the false and inaccurate credit reporting, problems with customer service and their inability to resolve the payment/credit dispute, the credit line suspensions and other issues. *See, e.g.,* Exhibit "**F**" attached hereto.

One of the best [and most recent] items of documentary evidence - and of admissions against the BOA Defendants' interests - in terms of virtually all of Plaintiff's causes of action is a letter [on BOA's "CORPORATE CENTER" letterhead] dated **November 9, 2010** [but, interestingly - and suspiciously] not mailed until **November 18th**]to Plaintiff from Bradley C. Jermyn, a "Customer Advocate" in

BOA's "Executive Customer Relations, Office of the CEO and President", and

attached hereto as Exhibit "**G**". In the letter, Mr. Jermyn writes as follows:

> Bank of America's Office of the CEO and President acknowledges receipt of your inquiry dated **August 28, 2010**, filed with the Office of the Comptroller of the Currency (OCC). As a customer advocate, I welcome the opportunity to respond to your concerns.

> In your inquiry, **you stated that your mortgage loan statements** _**do not reflect a modification signed in March 2010. In addition, you expressed concern about**_ _**negative credit reporting**_ **related to your mortgage account. You further expressed dissatisfaction with the customer service you have received in resolving this matter. You requested that your loan display the terms of the modification in our system and in the statements you receive**. I trust I have accurately captured your concerns and requests.

> In researching your account, _**I confirmed that your loan is expected to be adjusted according to the terms of your March 12, 2010 modification agreement in December 2010**_. **I regret any inconvenience caused by the delay you have experienced. On November 2, 2010, Bank of America placed your payments totaling $18,218.41 into a partial balance holding account as the first step toward rectification of your loan and the implementation of your modification**. **This is necessary because the account must reflect as it did when the modification was issued. Once the modification is implemented in** **December 2010**, **your payments will be credited to the account and backdated to the date you originally remitted them. At that time, your account and statements will also be updated to reflect your new monthly payments in accordance with the** **March 12, 2010 modification agreement**. **Until then, please continue making your regularly scheduled monthly payments according to the terms of the loan modification.**

**I have placed a block on the credit reporting for your account to account until December 31, 2010**. I noted that **our associates have completed credit bureau updates on <u>March 24, 2010</u> for the months of <u>November 2009 through February 2010</u>. Additionally, on <u>May 19, 2010</u>, Bank of America** *completed* **credit reporting adjustments for the months of <u>October 2009 through April 2010</u>. Bank of America** *processed* **a credit reporting adjustment for <u>May 2010 and June 2010 on July 29, 2010</u>. All updates should now be in effect. At this time, our records indicate all credit reporting on the subject account for the months of October 2009 through November 2010 has been adjusted to reflect no delinquency.**

Ms. Stroman, I regret if the level of service you have received from Bank of America did not meet your expectations. **Unfortunately, <u>the level of maintenance required on your account, necessitated by the modification agreement, was outside the scope of our standard customer service</u>. Accordingly, I have been assigned to monitor the status of your loan**.

Thank you for taking the time to **<u>discuss your concerns with me over the telephone on August 30, 20l0. I assure you that senior management is aware of your experience</u>** and that we view your feedback as an opportunity to evaluate and improve the service we provide to all customers….*(emphasis supplied)*

In addition to buttressing most of Plaintiff's claims standing alone, this letter, which undoubtedly speaks best for itself, also raises monumental concerns and should cause any reasonable reader to shake his or her head in absolute astonishment. For the BOA Defendants unequivocally admit no less than the following:

- That the Modification at issue should have been and was effective no later than **March 12, 2010**;
- That Plaintiff contacted BOA/BAC in writing and via telephone about her concerns/complaints;
- That "senior management" is aware of her experience;

\-      That BOA/BAC breached its contract(s) with Plaintiff and with one or more other third parties, as explained more fully herein;

\-      That BOA/BAC not only failed to timely implement Plaintiff's Modification, but that as of **November 9, 2010**, it had *still* not implemented it and or had not done so correctly;

\-      That BOA/BAC has been erroneously and wrongfully holding and misapplying numerous payments received from Plaintiff totaling at least **$18,218.41**;

\-      That as of **November 2, 2010**, BOA/BAC had done nothing to rectify the problems with Plaintiff's account and that despite being fully aware of the significant and various problems with same, that it contends it is unable to immediately and completely correct the problems;

\-      That BOA/BAC has waited nine (9) months before it has even alleged that *it will, in the future*, **begin** correctly applying payments previously received from Plaintiff to her account and to accurately account for same;

\-      That as early as **March 24, 2010** BOA/BAC admitted it transmitted and reported erroneous information to one or more Consumer Credit Agencies and that the erroneous information was *still* being reported as of **November 9, 2010**;

\-      That derogatory information pertaining to Plaintiff/her account should not have ever been reported to the CRAs and that she has never submitted a "late" payment in connection with the subject loan;

\-      That it was/is BOA/BAC's negligence and or willfulness in the handling of Plaintiff's Modification that has caused and or contributed to the innumerable problems, damages, anxiety, worry and hassles suffered by her; *and*

\-      BOA/BAC's handling and servicing of Plaintiff's account fell below even its own [already low] internal standard of care and customer service expectations.

### 34.

Plaintiff initiated also her own complaints with the Office of the Comptroller of the Currency ("OCC") on **Jan 26, 2010** and with the Federal Trade Commission ("FTC") on **February 21, 2010**.

Plaintiff also made numerous attempts to contact [and did on some occasions speak with] the BOA Defendants' representatives, by telephone throughout the end of **2009** and through the first half of **2010**. Four (4) of these telephone conversations/calls were recorded by Plaintiff; those of **May 3, 2010, May 17, 2010, July 12, 2010** and **July 20, 2010**. And although these calls also proved futile in terms resolving the problems with Plaintiff's account, some did serve to establish various facts in support of her contentions and or as admissions by and against BOA Defendants' interests.[7]

36.

Also in the course of these telephone calls [and in letters] the BOA Defendants' agents and employees confirmed and admitted that it had [and presumably still has] a general policy and practice of [erroneously, wrongfully and impermissibly] "holding" or diverting the monthly payments of Loan Modification participants - all of which were, in Plaintiff's case, timely and correctly tendered in full - and that it was intentionally handling Plaintiff's payments in such a manner, resulting in her payments

---

[7] Assuming no applicable privileges apply, Plaintiff will gladly share the content of these recordings - lawfully made while in and pursuant to Georgia law. However, before doing so, Plaintiff respectfully requests that in the event Plaintiff seeks to depose a BOA representative(s), that she not be compelled to disclose same until after such deposition(s) is completed and responses to Initial Disclosures are received from BOA [and hereby moves for an order accordingly]. *See, e.g.*, *National Consumer Law Center, Fair Debt Collection* (6th Ed. 2008) at § 2.4.9.3.

not being timely and or accurately "posted" or reflected in its records. [8]

37.

Yet the BOA Defendants continued to send inaccurate Billing Statements, dunning collection letters, etc. to Plaintiff, some of which threatened and or promised acceleration of the loan balance, negative credit reporting and or foreclosure of Plaintiff's property.

38.

The same is true of the billing errors that have appeared and continue to appear on Plaintiff's account statements. Said statements contain erroneous payment/debt information, erroneously assessed late fees, past-due balances, misapplied payments and other false, inaccurate and misleading information. To be sure, such erroneous statements have been issued as recently as **11/29/10**. *See* Exhibit "**H**" attached.

39.

In any event, the vast majority of Plaintiff's communications and inquiries either went entirely unanswered or garnered a response which was wholly insufficient, erroneous and or otherwise unacceptable. As a result, Plaintiff was effectively forced to seek legal counsel, which she ultimately did near the end of

---

[8]    In the conversation of **May 3, 2010**, the BOA/BAC representative admitted that Plaintiff's payments were held in a partial account and were not being properly applied or noted on the account and allegedly [and absurdly] that allegedly only *one* particular individual in its "Loss Mitigation Department" could correct the problem. Plaintiff nevertheless attempted on numerous occasions to contact said individual and left numerous voicemail messages for him/her, but she never received a response thereto.

**April of 2010**, by retaining the undersigned, a litigation attorney with substantial experience handling consumer rights, credit, contract and related matters.

40.

Naturally these errors/problems which resulted directly from and were proximately caused [in many cases intentionally, or with such lack of care and wantonness so as to be tantamount to willfulness] by the BOA Defendants' actions - caused Plaintiff a great deal of worry, concern, stress, anxiety, embarrassment, humiliation, hassle, time, expense and other adverse results and necessitated the she, and eventually her attorney, to expend considerable time in what ultimately amounted to a futile effort to resolve them short of litigation.

In addition, as explained in more detail below, Plaintiff suffered actual monetary damages as a result of both the BOA and CRA Defendants' actions/inactions, including substantial reduction of her Consumer Credit Score(s), increased interest rates [including on student loans obtained for her daughter's education], reduction in available credit on existing loans/credit cards, and impaired her ability to obtain additional sources of credit and or to do so at lower interests rates for which she would have otherwise qualified.

41.

**Nothing contained in the *Modification* documents addressed anything whatsoever pertaining to any change in the customary manner in which**

**payments were to be tendered or received/deposited, how they were to be treated or applied or any other related matter with respect to diverging from the long established history and course of dealings/conduct between the parties on the issue**. Nor was the issue otherwise addressed or discussed between the parties or in any other contractual documents. To the contrary; according the applicable contractual stipulations and conditions to which BOA/BAC was bound by virtue of its agreement with Fannie Mae, BOA/BAC was not allowed to change any such terms and was required to continue servicing the loan and accounting for payments received as it would otherwise do - i.e. as before/without the Modification. *See Announcement* at 20 ["**…borrower's payment during the trial period must not be equal to or greater than the contractual mortgage payment in effect prior to the trial period** "].

42.

More specifically, according to paragraph 8 of the *Loan Modification Agreement*,

> Except as otherwise specifically provided in this Agreement, the Note and Security Instrument **will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement**.

43.

On at least two (2) occasions Plaintiff also received collection letters from an entity known as Radian Guarantee, Inc., Plaintiff's mortgage insurer, to whom, according to Radian's own letter(s), the BOA Defendants erroneously and

unlawfully published derogatory information about the alleged status of Plaintiff's account/loan [libel] and her alleged inability to pay her mortgage and even referenced imminent/forthcoming foreclosure of her home.

44.

In addition to wrongfully, unlawfully, negligently and or intentionally/maliciously "misapplying" and "holding" some Plaintiff's payments, BOA/BAC also in many instances completely failed to account for payments tendered to it/them by her. These included payments for the months of **November 2009** through **February 2010**.

45.

Subsequent to the Modification taking effect, Plaintiff continued to timely and properly submit/transmit installment payments each month to BOA/BAC, and BOA/BAC has acknowledged and admitted that it has timely received said payments each month and has never alleged or suggested otherwise. In fact this fact has never been disputed by BOA/BAC.

46.

Alternatively and or additionally, BOA/BAC was, at the absolute, least, grossly negligent in its misappropriation or failure to accurately and competently account for its receipts of Plaintiff's payments with due care.

47.

In or about **January 2010**, when Plaintiff began receiving harassing

collection telephone calls from BOA/BAC [whom, as explained in more detail *infra*., is a third party debt collector subject to the FDCPA], Plaintiff realized that Defendants BOA/BAC were internally reporting erroneous and derogatory account/credit/payment information concerning her and her mortgage/loan/payment history. Naturally she also then became concerned about the fact that such erroneous and derogatory account/credit/payment information was likely to be inaccurately reported by Defendants BOA/BAC to third parties, such as the CRA Defendants.

48.

Thereafter, at some point in or about [but not earlier than] the middle of **January 2010**, Plaintiff independently and directly reviewed her Consumer Credit Reports, which was when she first learned that erroneous and derogatory payment/credit related information was being published/transmitted to various third parties, including, but not necessarily limited to, the "big three" national Consumer Credit Reporting Agencies; namely Defendants Equifax, Experian and Trans Union.[9]

49.

Based upon her review of information being reported by the CRA Defendants, Plaintiff has determined that the BOA Defendants have been

---

[9] Plaintiff has not yet reviewed any such reports or information maintained or reported by any other CRAs or other entities, but believes that other entities (e.g. Innovis - *see, e.g.*, 03/24/10 letter from BOA to Plaintiff) may in fact be reporting similar erroneous derogatory information).

knowingly and willfully transmitting and reporting erroneous and derogatory payment/credit information pertaining to Plaintiff without the maximum possible accuracy at some or all times from approximately **November 2009** up to and at least including **October of 2010**.[10] For example, "*3 Bureau Merged Credit Report*" [**#F62524092**] from "ChaseIDProtection", dated **September 1, 2010** [but not obtained/reviewed until many months later], shows an alleged past due balance of $11,420 as reported by TransUnion, $1,630 as reported by Experian and $0.00 as reported by Equifax. Obviously, pretermitting the fact that all such information is false and erroneous, two of the three figures must necessarily be inaccurate "on its face". This Report also erroneously reflects that Plaintiff's Credit Line had been suspended. Similar erroneous information has been gleaned from Reports maintained and issued by the CRA Defendants directly.

50.

After becoming aware of this erroneous and derogatory reported information, Plaintiff [directly/personally] disputed same in writing with each of the three CRAs on at least three (3) separate occasions. *See, e.g*., Exhibits "**I**", "**I-2**" and "**J**" attached hereto. And despite BOA/BAC's concomitant admission that the information was

---

[10]     Although much of the information and exact timing of the transmittal/publishing of same is difficult if not impossible to discern [Plaintiff not (yet) being privy to the internal records of the Defendants], it appears that either or both one or more of the CRA and or the BOA Defendants have perhaps at some point suspended reporting of the erroneous information but subsequently [unlawfully and erroneously] resumed and or "re-polluted" the transmission/publishing/inclusion of said information.

indeed inaccurate - as evidenced by, among other things, the numerous letters it sent to Plaintiff [and eventually, her undersigned counsel] wherein it alleged it had notified the CRAs about the "errors" and had purportedly requested that it correct/modify it accordingly - the CRAs **AND** BOA/BAC nevertheless stubbornly, egregiously, willfully and unlawfully either or both wrongfully verified and or refused to correct it.

50.

After Plaintiff retained the undersigned counsel, he too prepared and sent (via Certified U.S. Mail) separate/additional notices and "demand letters" to the CRA Defendants and Defendants BOA/BAC [and even Countrywide, in the abundance of caution], wherein he explained in great detail the basis for the dispute(s) and enclosed [in addition to written *Authorization* form(s) from Plaintiff] **additional/new** objective **documentary evidence** unequivocally substantiating Plaintiff's position and contentions as to the inaccuracy of the reported information and demanded, in the case of the CRAs, that they correct and cease reporting it, and in the case of BOA/BAC, that it/they cease willfully, erroneously and unlawfully verifying it. *See, e.g*., letters dated **June 3, 2010** directed via Certified U.S. Mail to each of the three CRA Defendants attached hereto as Exhibits "**K**",

"**L**" and "**M**".[11] Each of the aforementioned letters was received by the CRAs on either **June 10th or 11th** per USPS records. See attached Exhibit "**N**".

51.

Generally speaking, the CRA Defendants' responses to these letters were inadequate and confusing at best. And suffice it to say that to the extent any modifications/corrections to Plaintiff's Reports were made by any of the CRAs, they were only temporary, and, notwithstanding, the information maintained/published by each CRA was still being reported without the maximum possible accuracy required by law and Plaintiff's Reports were soon re-polluted with equally or greater false and inaccurate negative information.

52.

The BOA Defendants have acknowledged the credit reporting "errors" since as early as **March 25, 2010**, when the first "credit adjustment confirmation letter" was issued, and have been promising in writing to correct the false and erroneous information since at least that date and on numerous subsequent occasions, such as on **May 19, 2010, July 29, 2010** and **October 12, 2010**. *See* Exhibits "**O**", "**P**", "**Q**" and "**R**" attached. Yet Plaintiff's Credit Reports either continued to contain the erroneous information and or have been re-polluted virtually the entire time between **March of 2010** and present.

---

[11]     Plaintiff's Counsel also copied numerous governmental agencies on said letter(s), including the FTC, the FCRA Consumer. Response Center, the OCC, the Federal Reserve's Consumer Assistance Division, the Office of Thrift Supervision's Consumer Complaints Division and the FDIC's Consumer Response Center.

53.

As a result of the unlawful actions described herein and during times relevant thereto, numerous adverse actions against Plaintiff and her financial interests were taken not only by Defendants BOA/BAC, but also by other creditors as a direct result of the erroneous derogatory information that had been knowingly and unlawfully reported by the CRA Defendants and knowingly and unlawfully transmitted/verified by the CRAs.

54.

For example, on **March 22, 2010** Defendant BOA suspended Plaintiff's overdraft/line of credit account based on inaccurate information it obtained from [however ironically, for it of course also necessarily had the same false information in its own internal records], and that was published by, Defendant Trans Union. On the same date (**03/22/10**) Defendant BOA also reduced Plaintiff's VISA credit card limit from $17,000 to $5,400, likewise based on inaccurate information it obtained from Trans Union. And on or about **March 25, 2010**, Discover Card/Bank reduced Plaintiff's credit [card] limit, expressly as a result of the erroneous derogatory information that had been knowingly and unlawfully transmitted to, reported and verified by Defendant TransUnion - and knowingly and unlawfully transmitted and verified by the BOA Defendants. *See* Exhibits "**S**", "**T**" and "**U**" attached hereto. These torts resulted in actual damages to Plaintiff.

55.

In addition and as noted above, Plaintiff's Credit Scores were substantially depressed as a result of the intentional unlawful actions described herein.

56.

The aforementioned actions each had an actual, empirical and adverse impact on Plaintiff and caused her to suffer stress, embarrassment, humiliation, worry, anxiety, and other emotional distress.

57.

It is also worth noting that the only derogatory information contained/being reported in/on Plaintiff's Consumer Credit Reports is that which has been unlawfully and erroneously reported by the BOA Defendants. And prior to said derogatory reporting Plaintiff's Credit Scores were substantially higher.

58.

Defendants BOA/BAC has been frequently and continuously harassing Plaintiff since at least **March 2010** - even after retaining the undersigned and after he communicated his representation to them - in the course of its unlawful attempts to collect monies not due and owed to it, and this has caused considerable worry, stress and anxiety for Plaintiff.

59.

At or near the end of **July 2010** Plaintiff received letter from BOA dated **July 24, 2010** enclosing a [non-negotiated] check in the amount of **$824.89**, stating

that it allegedly did not receive the required amount due to satisfy the full payment for **May 2010**. Plaintiff then contacted BOA Customer Service department regarding the check, and the BOA representative stated that the letter and check were allegedly sent "in error". *See* Exhibit "**V**" attached.

60.

In addition to the wrongful "holding" of Plaintiff's payments, specific payments are not accounted for in her BOA/BAC transaction history, including those for **November** and **December 2009** and **January** and **February 2010**.

61.

Plaintiff's monthly mortgage statements are also erroneous; they contains inaccurate allegedly past due balances, the assessment of erroneous and unwarranted late fees. The Transaction History reports are also inaccurate, containing misapplied funds, omitted payments [specifically November 2009 through August 2010] and numerous payment reversals that appear to not make any sense.

62.

Plaintiff received unwarranted and unlawful debt collection calls for payments already received but "hidden" in the BOA Defendants' system(s). The most recent barrage of calls occurred on **June 24, 2010**, **June 25, 2010** and **June 30, 2010** for the June 2010 payment that had already been received [withdrawn from her bank account electronically] on **June 15th 2010**.

63.

On **June 21, 2010** Plaintiff received a late notice letter from BOA stating that it wanted to make her aware of a "foreclosure prevention program for active military service members". This notice was and is obviously erroneous, misplaced and inapplicable to Plaintiff. *See* Exhibit "**W**" attached.

64.

On **July 16, 2010** Plaintiff received an erroneous and unlawful notice/letter from BOA dated **July 8, 2010** about its intent to accelerate the loan, which incorrectly indicated an alleged past due balance of $9,814.38. *See* Exhibit "**X**" attached. In response, Plaintiff naturally became very anxious, upset and worried and contacted BOA/BAC customer service, whereupon its agent told her to disregard it. Plaintiff replied that it was unreasonable for BOA not to prevent such letters to go out to customers with knowledge they will or are likely to cause unnecessary and unwarranted anxiety and stress for its customers.

## IV    ENUMERATED CAUSES OF ACTION
### (A)    FEDERAL LAW CLAIMS
#### Count One

*Violations of Real Estate Settlement Procedures Act ("RESPA")*
*[12 U.S.C. § 2601 et seq.]*

65.

The BOA Defendants have demonstrated and continue to demonstrate a pattern and practice of repeatedly and intentionally/knowingly violating 12 U.S.C. 2601 *et seq.* [also known and referred to as the *Real Estate Settlement Procedures*

*Act of 1974* or "RESPA", the "*Cranston-Gonzalez National Affordable Housing Act*" and or "*Regulation X*"] on numerous occasions in conjunction with the servicing of Plaintiff's Loan/Account at issue in this case.

66.

As noted herein, Plaintiff sent - either directly by her or by her undersigned attorney, Auden L. Grumet, Esq., numerous properly identified, addressed and otherwise legally compliant "*Qualified Written Request(s)*" ["QWR"] to the BOA Defendants regarding the Account/Loan at issue and the legitimate, repeated, varied and persisting problems and errors pertaining to same.

67.

The statute(s) violated by the BOA Defendants include, but is not limited to, 12 U.S.C. § 2605(e), which they violated repeatedly and on multiple occasions by failing to timely or properly acknowledge Plaintiff's *Qualified Written Requests* as noted elsewhere herein. *See*, *e.g.*, letter Exhibits cited herein.

68.

In addition, the BOA Defendants violated 12 U.S.C. § 2605(e) by failing to timely and or sufficiently respond or to make the corrections/take the corrective action identified in [e.g. the crediting of late penalties] in response to the numerous Plaintiff's *Qualified Written Requests* as noted elsewhere herein. *Id*.

69.

In addition, the BOA Defendants violated 12 U.S.C. § 2605(e) by failing to

transmit or to timely transmit written notice of such corrections to Plaintiff after receipt of each of Plaintiff's *Qualified Written Requests*.

70.

In addition, the BOA Defendants violated 12 U.S.C. § 2605(e)(2)(C) by failing to provide Plaintiff with the information and documentation requested in her QWRs, or an explanation why the information sought was unavailable, no later than 60 days after receipt of the Plaintiff's qualified written request.

71.

In addition, the BOA Defendants violated 12 U.S.C. § 2605(e)(2) by refusing and or failing to cease its collection efforts after receiving Plaintiff's QWRs.

72.

In addition, upon information and belief, the BOA Defendants violated 12 U.S.C. § 2605(e)(3) by providing erroneous information to one or more Consumer Reporting Agencies regarding overdue payments allegedly owed by Plaintiff that were related to her QWRs.

73.

The aforementioned actions and inactions by BOA/BAC demonstrate a pattern and or practice of violating the applicable law [and or with such conscious disregard for the likely consequences of their actions so as to give rise to a

presumption of willfulness (or, alternatively, at the very least, as a result of gross negligence)]. The BOA Defendants are therefore liable to Plaintiff for statutory and actual damages, attorney's fees and costs for each such failure/violation pursuant to 12 U.S.C. § 2605(f) [in addition to any other applicable statute, regulation, law or similar provision].

74.

The BOA Defendants have also demonstrated a pattern of intentionally [and or with such conscious disregard for the likely consequences of their actions so as to give rise to a presumption of willfulness (or, alternatively, at the very least, as a result of gross negligence)] violating 12 U.S.C. § 2605(g) and 42 U.S.C. § 4012a by repeatedly and on numerous separate occasions - and - failing to comply with said statute(s)' requirements as related to the "*Administration of Escrow Accounts*". In particular, the BOA Defendants have failed to accurately account for monies tendered and [which should be] existing in Plaintiff's account and otherwise negligently or willfully mishandling, misapplying and or miscalculating the funds therein. The BOA Defendants are therefore liable to Plaintiff for statutory and actual damages, attorney's fees and costs pursuant to §§ 2605(f) and 4012a(f).

**Count Two**

***Violations of the Home Affordable Modification Program ("HAMP")***

75.

Servicers handling loans for all eligible Fannie Mae portfolio mortgage loans and MBS pool mortgage loans guaranteed by Fannie Mae are required to participate in the *Home Affordable Modification Program ("HAMP"),* implemented under the Emergency Economic Stabilization Act of 2008 ("ESSA"). *See, e.g.,* **Announcement 09-05 R April 21, 2009**, cited *supra.*

76.

As noted above, upon information and belief, Plaintiff's loan is owned or "backed" by Fannie Mae ("FM") and is therefore subject to its rules and regulations. *Id.*

77.

Alternatively or additionally, upon information and belief, at all relevant times Plaintiff's home loan has been an eligible Fannie Mae portfolio mortgage loan or MBS pool mortgage loan guaranteed by Fannie Mae.

78.

**As announced in FM's** *Supplemental Directive 09-01***, in order for a servicer to participate in the HAMP**, **the servicer** *must* **execute a servicer participation agreement and related documents with Fannie Mae** in its capacity as financial agent for the United States (as designated by Treasury). *See* ESSA § 101(c)(3) and **https://www.efanniemae.com/sf/mha/mhamod**. As noted above, Plaintiff has not yet obtained a copy of said agreement - because BOA/BAC has refused and failed to provide it. However, either there is such an agreement to which the BOA Defendants are bound

or there is not, in which case the BOA Defendants violated its contract with FM and thus

breached its legal obligations to Plaintiff and otherwise committed various torts.

79.

According to the aforementioned *Announcement*,

> As a result of such direction from HUD, this section of the Announcement is incorporated by reference into the Mortgage Selling and Servicing Contract between Fannie Mae **and its servicers** and constitutes an agreement entered into between Fannie Mae, on behalf of HUD, and Fannie Mae's approved servicers. As such, this is an agreement entered into by Fannie Mae's approved servicers with an enforcement agency (i.e., HUD) to permit the enforcement agency to monitor or enforce **compliance with federal law**, within the meaning of 12 C.F.R. 202.5(a)(2).

*Id*. at 5 *(emphasis supplied)*. Therefore, BOA/BAC, as the servicer of the loan at

issue, is contractually bound by the terms and conditions as set out by FM under its

agreements with FM loans serviced by it.

80.

HAMP is governed by documents issued by Treasury and designated in the

HAMP. These documents include uniform "*Home Affordable Modification

Program Guidelines*" ("Guidelines"), subsequent *Supplemental Directives*,

*Announcements* and "*Frequently Asked Questions*" ("FAQs") intended to further

clarify HAMP program requirements.

81.

According to the *Announcement*, under HAMP, servicers will use a uniform loan

modification process to provide eligible borrowers with sustainable monthly payments.

The HAMP implementation guidelines set forth therein apply to **all** eligible one-to four-

unit owner-occupied properties securing Fannie Mae portfolio mortgage loans and MBS pool mortgage loans guaranteed by Fannie Mae. All Fannie Mae-approved servicers must participate in the program for all eligible Fannie Mae portfolio mortgage loans and MBS pool mortgage loans guaranteed by Fannie Mae. *Id*. at 5.

82.

Importantly, "[A] borrower who is **current**, contacts the servicer for a modification, appears potentially eligible for a modification, and has suffered an eligible hardship (as described above) **must** be evaluated using the imminent default screen…." *Id. (emphasis supplied).* Plaintiff's financial condition was sufficient to pass the screen, as the Approval reflects.

83.

The BOA Defendants violated the contractual terms as set out by Fannie Mae in the *Announcement*, cited *supra*., and various other related guidelines and directives issued to them or to which they are otherwise lawfully bound.

84.

For example, under the heading entitled "**Compliance with Applicable Laws**" the *Announcement* states in no uncertain terms [in relevant part] that,

> "Fannie Mae reminds each servicer (and any subservicer it uses) **to be aware of, and in *full* compliance with, *all* federal, state, and local laws (including statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions), including, but not limited to, the following laws** that apply to ***any*** of its practices related to the HAMP…" *(emphasis supplied)*

It then goes on to specifically cite Section 5 of the Federal Trade Commission Act ("which

**prohibits unfair or deceptive acts or practices**…"); The **Real Estate Settlement**

**Procedures Act** (RESPA) and The **Fair Debt Collection Practices Act**. *Id*. at 14. *See also*

**http://www.dailyreportonline.com/Editorial/News/singleEdit.asp?individual_SQL=11**

**/1/2010@36471&amp;rssFeed=free** generally.

85.

The *Announcement* also provides credit reporting guidelines that the BOA

Defendants violated as noted elsewhere herein. *Id*. at 29 *(emphasis supplied)*.

86.

The *Announcement* also instructs servicers that,

> When discussing the HAMP, the servicer **should provide the borrower with information designed to help the borrower understand the modification terms that are being offered and the modification process. Such communication should help minimize potential borrower confusion, foster good customer relations, and improve legal compliance and reduce other risks in connection with the transaction**. A servicer also ***must*** **provide a borrower with clear and understandable written information about the material terms, costs, and _risks_ of the modified mortgage loan <u>in a timely manner to enable borrowers to make informed decisions</u>**.

> The servicer should inform the borrower during discussions that a modification under the HAMP will cancel any assumption, variable or step-rate feature, or enhanced payment options…in the borrower's existing loan, at the time the loan is modified.

> Fannie Mae expects servicers to have adequate staffing, resources and facilities for receiving and processing the HAMP documents and any requested information that is submitted by borrowers. Servicers **must** have procedures and systems in place to be able to respond to inquiries and complaints about the HAMP. **<u>Servicers should ensure that such inquiries</u>**

**and complaints are provided *fair consideration, and timely and appropriate responses and resolution*.** *(emphasis supplied)*

*Id*. at 15. The BOA Defendants violated these requirements as conveyed in the *Announcement*.

87.

The BOA Defendants have also violated the late fee rules that instruct servicers "**[A]ll** late charges, penalties, stop payment fees or similar fees **must** be waived upon successful completion of the trial period." *Id*. at 30.

88.

In addition, according to relevant portions of paragraph 8.4 of the *Announcement*, entitled "*Application of Trial Period Payments*",

> Trial period payments **must** be applied in accordance with the terms of the existing loan documents. **A servicer should not change a borrower's scheduled loan terms in its servicing system and/or mortgage file during the trial period**. *If permitted by the applicable loan documents*, servicers may accept and hold as "unapplied funds" (held in a T&I custodial account) amounts received which do not constitute a full monthly, contractual principal, interest, tax and insurance (PITI) payment. **However**, when the total of the reduced payments held as "unapplied funds" is equal to a full PITI payment, **the servicer is required to apply all full payments to the mortgage loan. Any unapplied funds remaining at the end of the trial payment period that do not constitute a full PITI payment should be applied to reduce any amounts that would otherwise be capitalized onto the principal balance**. The borrower may make scheduled payments earlier than expected; however, the payments will not result in acceleration of the modification effective date. Servicers are encouraged to require automated payment methods, such as automatic payment drafting. If automatic payment drafting is required, it must be used by all HAMP borrowers, unless a borrower opts out.
>
> **If the borrower makes a payment that is greater than his or her trial period payment (e.g., the existing contractual monthly payment rather than the trial period payment), the servicer *must* review investor guidelines to determine if the borrower remains eligible for HAMP and, if making the contractual payment could jeopardize eligibility, *notify the borrower in***

*writing that making payments in excess of the trial period payment may
jeopardize the borrower's eligibility for a HAMP modification*…**In no event
should the servicer return the funds to the borrower**.

89.

In addition, the BOA Defendants violated Freddie Mac's contractual provisions, rules, industry standards and applicable law by, upon information and belief, failing to flag or appropriately notate Plaintiff's loan file about the loan modification. *See, e.g.,* Fannie Mae *Single-Family Seller/Servicer Guide (Guide) Bulletin* (12/12/08)[**http://www.freddiemac.com/sell/guide/bulletins/pdf/bll121208.pdf**] at 4 (Guide section B65.21.1. The collection and servicing records should have been changed to reflect the new loan, the effective full payment of all amounts due and the forgiveness of late fees. Instead, the servicing records reflect that the amount due was not changed, the late fees were still due. The mortgage records of the Servicer must be updated to reflect the modified terms as soon as the *Modification Agreement* has been executed. *Id*.

The effect of these failures was to make the loan in BOA's records erroneously appear to be in default as of the first payment after the Modification although it was not, which in turn caused Plaintiff's early Modification payments to be placed in "suspense", which again made payments appear even further behind, all of which generally led BOA to erroneously and wrongfully treat the mortgage as one being in default.

90.

Further, upon information and belief, the BOA Defendants compounded the

confusion by failing to send accurate periodic loan statements or coupon books outlining exactly what the payment would be after the Modification and the breakdown of same.

91.

Even assuming for argument's sake that there was a delinquency of some kind on Plaintiff's part after the Modification, FM policies require that immediate contact be made in such circumstances - "The servicer must extend additional efforts to a Borrower whose Mortgage has been modified under the loan modification workout option. To deter recurrence of default, the Servicer **must**: Ensure the [borrower] has received updated payment coupons prior to the due date of the first payment; During the first three months after the mortgage is modified, call the Borrower within the five business days after the payment due date if they have not remitted their payment…[and] Call the borrower by the 10th day of delinquency if the payment has not been received. Yet, assuming BOA somehow contends Plaintiff was delinquent, none of these procedures were followed.

## **Count Three**

### *Violations of the Fair Credit Billing Act ("FCBA")[15 U.S.C. § 1666 et seq.]*

92.

The BOA Defendants violated 15 U.S.C. § 1666 *et seq*. on numerous occasions by failing to timely *acknowledge* Plaintiff's properly issued *Notice(s) of Billing Error(s)* in accordance therewith.

93.

The BOA Defendants violated 15 U.S.C. § 1666 *et seq.* on numerous occasions by failing to timely and or sufficiently *respond to* Plaintiff's properly issued *Notice(s) of Billing Error(s)* in accordance therewith.

94.

For example, in a letter dated **June 10, 2010**, Plaintiff, through her attorney, wrote to Defendants BOA and BAC via Certified U.S. Mail (Article No.: 7005 3110 0003 7895 8645) and stated in relevant part as follows,

> Among other things, this letter and notice is…also being issued pursuant to and in conjunction with the Truth in Lending ["TILA"], **Fair Credit Billing ["FCBA"]**, Fair Credit Reporting ["FCRA"] and Fair and Accurate Credit Transactions [FACTA] Acts. Specifically, any and all indications in, on or about Ms. Stroman's account or contained in your records that reflect that she was allegedly **late or delinquent in paying, or failed to submit payment, in conjunction with this account during the months of November 2009 through at least May of 2010 [or at any other time] are completely erroneous and inaccurate**. **ALL** periodic payments due on this account have, as BOA/BAC admits, *always* been *timely* and *properly* tendered and otherwise in compliance with any applicable contractual obligations.

*See* Exhibit "**Y**" attached.

95.

In addition, in a letter dated **July 29, 2010**, Plaintiff, through her attorney, wrote to Countrywide Home Loans [the predecessor loan servicer to BOA] and Bank of America, via Certified U.S. Mail (Article No.: 7005 3110 0003 7895 7303), and stated in relevant part as follows,

> Among other things, this letter and notice is…also being issued pursuant to and in conjunction with the Truth in Lending ["TILA"], **Fair Credit Billing ["FCBA"],** Fair Credit Reporting ["FCRA"] and Fair and Accurate Credit Transactions [FACTA] Acts. Specifically, any and all indications in, on or about Ms. Stroman's account or contained in your records that reflect that she

43

was allegedly **late or delinquent in paying, or failed to submit payment, in conjunction with this account during the months of November 2009 through at least May of 2010 [or at any other time] are completely erroneous and inaccurate**. **ALL** periodic payments due on this account have, as Countrywide/BOA/BAC admits, *always* been *timely* and *properly* tendered and otherwise in compliance with any applicable contractual obligations.

The same is true with respect to any late fees or other charges assessed on this account, which are erroneous and hereby disputed [pursuant to RESPA, the FCRA, FCBA and or any other applicable law or principle, including basic contract law]. As such, <u>**we demand that all erroneous assessments and associated charges, fees, interest, etc. - whether past, present or future - be immediately removed/credited and her [your] records and files regarding her account/loan/mortgage be corrected**</u>.
This letter [and those enclosed herein] are intended and shall serve as a reiteration/expansion of and on the previous notices already issued by Ms. Stroman directly - both to Bank of America, BAC Home Loans and any associated or related entity(s) - in conjunction with the aforementioned statutes that my client disputes the accuracy of the information contained in various account statements and provided to her and third parties concerning the above-referenced loan. *See* generally, for example, 15 U.S.C. §§ 1637, 1647, 1666 and 1692.

96.

The BOA Defendants violated 15 U.S.C. § 1666a(a) on numerous occasions by directly or indirectly threatening to report, and *actually* reporting, [erroneous] adverse credit-related information to one or more third-party(s) in conjunction with Plaintiff's Account(s) after receiving from Plaintiff properly issued *Notice(s) of Billing Error(s)*.

97.

The BOA Defendants also violated 15 U.S.C. § 1666a(b) on one or more occasions by failing to include, along with their communication of Plaintiff's [alleged] delinquency to one or more third-parties, notice that Plaintiff disputed

said amount(s)/debt(s) and by failing to notify and provide to Plaintiff the name and address of each party to whom it reported such information after receiving properly issued *Notice(s) of Billing Error(s)*.

98.

The BOA Defendants violated 15 U.S.C. § 1666(c) on one or more occasions by prematurely taking "action" to collect amounts allegedly due on Plaintiff's Account(s) after having received *Notice(s) of Billing Error(s)*.

99.

The BOA Defendants violated 15 U.S.C. §§ 1666a(b) and or 1666a(d) by failing to promptly and or timely credit or refund one or more payment(s) and or excess payment(s) submitted/tendered by Plaintiff.

100.

Alternatively and or additionally, the BOA Defendants violated the FCBA by failing to provide or to timely provide information as to how it allegedly confirmed the validity/accuracy of the error/billing entry and or to issue the required notice(s) of correction of such errors to other creditors.

### **Count Four**

***Violations of the Fair Credit Reporting and Fair & Accurate Credit Transactions Acts (FCRA - FACTA)[15 U.S.C. § 1681 et seq.]***

101.

Defendants Equifax, Experian and TransUnion are all national Consumer Credit Reporting Agencies ("CRAs") as defined by 15 U.S.C. §§ 1681 *et seq.* [Fair

Credit Reporting and Fair and Accurate Credit Transactions Acts]("FCRA").

102.

The CRA Defendants have, upon information and belief, *willfully* committed one or more violations of 15 U.S.C. §§ 1681 *et seq.* [Fair Credit Reporting and Fair and Accurate Credit Transactions Acts] by intentionally, willfully, knowingly [and or negligently] and repeatedly failing to report information pertaining to Plaintiff with the maximum possible accuracy and or as otherwise required by law - including as identified above in conjunction with Fannie Mae's HAMP *Announcement*.

103.

In addition, the *Announcement* heading entitled "***Credit Bureau Reporting***" states as follows:

> In accordance with the Servicing Guide, Part VII, Section 107: Notifying Credit Repositories, **the servicer should continue to report a "full-file" status report to the four major credit repositories for each loan under the HAMP in accordance with the Fair Credit Reporting Act and credit bureau requirements as provided by the Consumer Data Industry Association** (the "CDIA") on the basis of the following:
>
> **For borrowers who are current when they enter the trial period, the servicer should report the borrower current but on a modified payment if the borrower makes timely payments by the 30th day of each trial period month at the modified amount during the trial period, as well as report the modification when completed.**
>
> **"Full-file" reporting means that the servicer must describe the *exact* status of each mortgage loan it is servicing as of the last business day of *each month*.**

*Id*. at 29 *(emphasis supplied)*. The BOA Defendants did not follow these rules with

respect to Plaintiff. *See also Fannie May Borrower FAQ* at 12 (**http://makinghomeaffordable.gov/docs/BORROWER%20FAQs_6-8-10.pdf**).

> **Each month, servicers must describe to the credit reporting agencies the exact status of each mortgage. If you are current with your mortgage payments prior to the trial period and you make each trial period payment on time, your servicer must report you as current and also identify the loan as "modified under federal government plan."**
>
> **If you are delinquent (at least 30 days past the due date) prior to the trial period and the reduced payments do not bring the account current, your servicer must report the level of delinquency and also identify the loan as "modified under federal government plan."**

104.

The CRA Defendants have, upon information and belief, *willfully* committed one or more violations of 15 U.S.C. § 1681i by failing to abide by and or to timely comply with the requirements pertaining to disputed accuracy and reinvestigation procedures upon being notified by Plaintiff [and or her attorney/agent] that the accuracy of the information was disputed.

105.

Additionally and or alternatively, the CRA Defendants have, upon information and belief, *negligently* committed one or more violations of 15 U.S.C. § 1681i by failing to abide by and or to timely comply with the requirements pertaining to disputed accuracy and reinvestigation procedures upon being notified by Plaintiff [and or her attorney/agent] that the accuracy of the information as reported was disputed.

## 106.

Additionally and or alternatively, the CRA Defendants have, upon information and belief, negligently or intentionally committed one or more violations of 15 U.S.C. § 1681i(a)(3) pertaining to reinvestigation procedures by erroneously, arbitrarily, unilaterally and unfairly determining that one or more disputes/notices issued by Plaintiff was allegedly frivolous or irrelevant [*see, e.g.*, **February 16, 2010** letter from TransUnion] despite having received the **June 3, 2010** letter from Plaintiff's counsel wherein he specifically noted as follows:

> However, **this letter and notice is not limited to any particular report or document, but rather is meant to address any and all reports** and any other credit/financial or analogous information pertaining to Ms. Stroman that is collected, received, compiled, maintained, published and or disseminated by Experian, its agents, employees and or related persons or entities.
>
> **<u>Furthermore, this letter is not and should not be construed as merely a reiteration or re-assertion of the same or substantially similar errors/inaccuracies. Rather, new/additional information and evidence is being provided and new/additional errors/inaccuracies have been identified</u>**.
> *(Emphasis supplied)*

## 107.

The BOA Defendants have, upon information and belief, willfully committed one or more violations of 15 U.S.C. §§ 1681 *et seq.* [Fair Credit Reporting and Fair and Accurate Credit Transactions Acts] by intentionally, willfully, knowingly [and or negligently] and repeatedly failing to provide accurate information to one or more

Consumer Credit Reporting Agencies and or by reporting such inaccurate information despite knowing or having reasonable cause to believe it was inaccurate.

108.

The BOA Defendants have, upon information and belief, willfully committed one or more violations of 15 U.S.C. § 1681s-2 *et seq.* [Fair Credit Reporting and Fair and Accurate Credit Transactions Acts] by intentionally, willfully, knowingly and repeatedly failing to provide accurate information to one or more Consumer Credit Reporting Agencies and or by reporting such inaccurate information despite knowing or having reasonable cause to believe it was inaccurate.[12] *Id.*

109.

The BOA Defendants have, upon information and belief, *willfully* committed one or more violations of 15 U.S.C. § 1681s-2(b) by failing to abide by and or to timely comply with the requirements pertaining to the investigation and verification of information after being notified by the CRAs that Plaintiff disputed the accuracy of the information as reported. *Id.*

110.

Additionally and or alternatively, the BOA Defendants have, upon

---

[12]     Although Plaintiff recognizes that most courts to consider the issue have found that no private right of action exists in favor of consumers directly against furnishers who violate § 1681s-2(a)(1) by providing inaccurate information to CRAs, these facts are relevant to other issues, such as establishing overall bad faith, patterns and practices and with respect to certain non-preempted common law claims - *e.g.* defamation - as described herein. *See also* 74 Fed. Reg. 31,484 (July 1, 2009) and 15 U.S.C. § 1681s-2(a)(8).

information and belief, *negligently* committed one or more violations of 15 U.S.C.

§ 1681s-2(b) by failing to abide by and or to timely comply with the requirements

pertaining to the investigation and verification of information after being notified

by the CRAs that Plaintiff disputed the accuracy of the information as reported. *Id*.

111.

Additionally and or alternatively, the CRA Defendants violated and or failed to

comply with various other provisions of 15 U.S.C. § 1681i *et seq*. by, for example,

failing to respond to or provide the information and documentation, and or issue the

notices, as requested by Plaintiff below. *See, e.g*., certified letters of **June 3, 2010**

from Plaintiff's counsel to CRA Defendants, cited above, wherein he wrote as follows:

> **I am also formally requesting that you provide me with a description of how you verified the information in her [your] Report, including a description of the procedure used to determine the accuracy and completeness of the information, and the business name, address and telephone number of any furnisher(s) of information you contacted in connection with same pursuant to 15 U.S.C. § 1681i(a)(6)(B)(iii)** [although this does not relieve you from investigating further].
>
> Further, on behalf of Ms. Stroman, demand is hereby made that, **following the deletion or correction of any derogatory information, you provide notice to past recipients of her Report(s) indicating what information was incorrect and what has been changed**. *See* 15 U.S.C. § 1681i(d). Request is also made for you to provide me with a current [corrected] version of Ms. Stroman's Consumer Credit Report along with any Credit Score or related numerical or other information you are required to provide pursuant to 15 U.S.C. § 1681g(f) **and** that you provide me with any and all information/documentation pertaining to "[T]he dates, original payees, and amounts of any checks upon which is based any adverse characterization" of Ms. Stroman included in [her] file pursuant to 15 U.S.C. § 1681g(a)(4).

**Demand is also made for you to disclose and provide any and all information/documentation pertaining to the following pursuant to 15 U.S.C. § 1681g(a)(3)**:
The identification - including the name(s) or, if applicable, the trade name [written in full] under which such person/entity conducts business - and the address and telephone number of each person(s) [including each end-user identified under section 1681e (e)(1)] that procured Ms. Stroman's Consumer Credit Report for employment purposes, during the preceding two (2) years or for any other purpose during the preceding one (1) year; and record of all inquiries received by you during the preceding one (1) year that identified Ms. Stroman in connection with a credit or insurance transaction that she did not initiate.

## 112.

Alternatively and or additionally, the CRA Defendants violated and or failed to comply with various other provisions of 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the inaccurate and/or unverified information from Plaintiff's consumer Report/File after being requested to do so.

## 113.

Alternatively and or additionally, the CRA Defendants violated the FCRA's provisions pertaining to the reinsertion of previously deleted material.

## 114.

Alternatively and or additionally, the CRA Defendants violated the FCRA's provisions regarding the notification and or deletion requirements pertaining to disputed information.

## 115.

Additionally, and more specifically, the CRA Defendants [also] violated and or failed to comply with various other provisions of 15 U.S.C. § 1681i(4) by failing

to "review and consider all relevant information submitted by [Plaintiff] in the period described in paragraph (1)(A) with respect to such disputed information". *See, e.g.*, Plaintiff's counsel's letters of **June 3, 2010**, cited *supra*., sent to each of the CRA Defendants via Certified Mail, Return Receipt Requested [and in the case of Equifax, also by facsimile], wherein he cited to Plaintiff's previous correspondence and of her having already provided each Defendant CRA with very relevant information *and documentation/evidence*, **including letters from the BOA Defendants themselves**, and wrote,

> ***And despite her having provided you with such documentation, you nevertheless failed and refused in bad faith to correct same***. ***See*** **letter dated 03/24/10 from BOA Home Loans and 03/25/10 letter from BOA's Office of the CEO and President, both enclosed herein, each of which conveys in no uncertain terms the fact that the negative information reported for all relevant periods was erroneous - <u>and the 03/24/10 letter states that it had allegedly submitted a request to each of the CRAs on 03/24/10 to correct all such negative account information</u>**.

> To be sure, Ms. Stroman just received *two additional* letters from BOA, both dated **05/19/10 (<u>received approximately one week ago</u>)** [also enclosed] wherein it *again* acknowledges her credit report "adjustment request" and *again* claims to have contemporaneously submitted an associated request to you. Obviously Experian and BOA continue to blatantly, willfully and egregiously violate the FCRA, and this case epitomizes the context in which a matter is reported without the maximum possible accuracy as described under 15 U.S.C. § 1681e(b), as well as other statutes and caselaw.

> In sum, you are hereby directed to **immediately** either **(1)** remove any and all derogatory information related to the above-referenced accounts/debts *or*, in the unlikely event you (unlawfully) fail or chose not to timely correct said information in a manner consistent with these instructions and so as to report it with the ***maximum possible accuracy*** or to otherwise disregard the facts and evidence referenced herein as a sufficient and proper basis to comply

with these requests, (**2**) contact the original creditor - making sure to specifically address and ask about the evidence cited/provided herein - and obtain verification, ***substantiated by not inconsistent objective documentary evidence***, of the ***maximum*** accuracy of this information **in accordance with the facts and law cited, and evidence enclosed, herein**. *See Morris v. Equifax Information Services*, 2006 WL 2043567 and *Bryant v. TRW*, 689 F2d 72 (6th Cir. 1982).

116.

The BOA Defendants have even **acknowledged and admitted *in writing*** (and otherwise) having reported such [disputed] inaccurate financial/credit information and made numerous empty and meaningless false promises about correcting/retracting the unlawful and inaccurate reporting of such erroneous information but wholly and repeatedly failed to follow through with said promises. *See, e.g.,* exhibits cited herein.

117.

The BOA Defendants have, upon information and belief, willfully committed one or more violations of 15 U.S.C. § 1681s-2 *et seq.* by intentionally and knowingly failing to provide and or include notice(s) of dispute(s) [sent by Plaintiff and or her attorney] to the CRA(s) as required. *Id.*

118.

The BOA Defendants have, upon information and belief, willfully committed one or more violations of 15 U.S.C. § 1681s-2 *et seq.* by intentionally and knowingly failing to provide and or to timely provide the notice(s) [to Plaintiff] required therein pertaining to Defendants' reporting or furnishing of negative or

derogatory information to the Consumer Credit Reporting Agency(s). *Id*.

119.

The BOA Defendants have, upon information and belief, willfully committed one or more violations of 15 U.S.C. § 1681s-2 *et seq*. by intentionally and knowingly failing to conduct and or failing to timely conduct the investigation(s) required thereunder after receiving one or more notices of dispute(s) from Plaintiff regarding the Account(s) at issue. *Id*.

120.

The CRA Defendants have, upon information and belief, willfully committed one or more violations of 15 U.S.C. § 1681s-2 et seq. by intentionally failing to correct, and or to timely and promptly correct, modify and or delete the applicable information and or that could not be verified after Plaintiff notified the CRA Defendants about the inaccurate, erroneous and or disputed information [and provided them with documentation substantiating and or supporting the contention(s) as to the inaccuracy(s)] and requested that it be corrected, modified and or deleted.

121.

The CRA Defendants violated 15 U.S.C. § 1681s-2(a)(E) on numerous occasions by failing to timely make the appropriate corrections to Plaintiff's Account(s) after having received properly issued *Notice(s) of Billing Error(s)*.

122.

Defendant Experian also violated - intentionally, egregiously, with malice and in bad faith - 15 U.S.C. § 1681h(a)(1), regarding "*Conditions and form of Disclosure to Consumers*", when demanding improper and or excessive/information/documentation that was/is not required to be provided by a consumer and when it refused to respond/investigate or "honor [Plaintiff's] request" per its letter dated **June 11, 2010**. Moreover, Plaintiff and or her attorney had already provided adequate documentation/information to warrant/compel disclosure. *See, e.g., Menton v. Experian Corp*., 2003 WL 941388 (S.D.N.Y. 2003)[unreported](consumer was ***not*** required to provide his Social Security number as "proper identification," as defined by FCRA and CRA could have verified consumer's identity with various alternative forms of identification furnished by consumer).

123.

Similarly, Defendant Experian also violated the FCRA by unlawfully and improperly alleging that Mr. Grumet had failed to provide any evidence of a release/authorization from Plaintiff, despite his having provided it with more than adequate written notice/ authorization, signed by her, of the his representation and of her consent/demand that Experian [and all the named Defendants] release to him all information/documentation necessary or requested in conjunction with his correspondence or Plaintiff's disputes. Experian thus refused to investigate/attempt

to verify the disputed information and or to communicate with Mr. Grumet on the issue. *See* **06/17/10** letter from Experian attached as Exhibit "**Z**".

124.

The BOA Defendants committed a similar tort - intentionally, egregiously, with malice and in bad faith - when it/they demanded similarly unreasonable verification/authorization from Plaintiff and or her attorney in response to written inquiries concerning her loan/dispute.

## Count Five

### *Violations of the Fair Debt Collection Practices Act ("FDCPA") [15 U.S.C. § 1692 et seq.]*

125.

The [alleged] debt(s) at issue is a consumer debt as defined under the FDCPA.

126.

The BOA Defendants - and Defendant BAC in particular - is and was at all relevant times acting in the capacity of a debt collector as defined by 15 U.S.C. §§ 1692a.

127.

More specifically, upon information and belief and as noted above, the BOA Defendants, as servicers of Plaintiff's loan/Note and not being the true owners/holders thereof, are and were acting at all relevant times hereto as debt collectors under the FDCPA. *See* 15 U.S.C. § 1692a.

128.

For example, in a letter dated **July 7, 2010** addressed to Plaintiff's counsel,

"Bank of America Home Loans" (which also refers to itself as "Bank of America"

in the same letter) wrote, in response to Plaintiff's Qualified Written Requests

[issued by Plaintiff's counsel on behalf of Plaintiff] wrote as follows,

> Thank you for contacting our office with **your correspondence dated June 10, 2010**. The concerns referenced in your correspondence were forwarded to my attention for review and response.[13] In your letter, you expressed dissatisfaction with various aspects of the **origination** of the above-referenced loan. **<u>You requested Bank of America to provide you with numerous copies of documents relating to the origination of the subject loan</u> and a loan history including fees assessed to the subject loan**.

> Below, I have provided a summary of the subject loan. Please note that **<u>all other requests are declined as they seek documentation that goes beyond that which is available through a Qualified Written Request made under 12 U.S.C. § 2605(B)</u>**.

> Signed copies of the available documents pertaining to the origination of the subject loan were mailed **July 6, 2010**. The signatures on these documents confirm the borrowers received, read, understood, and agreed to the terms and conditions contained within each document. If the borrowers had concerns or were not in agreement to the terms and conditions, they were under no obligation to sign the loan documents or continue the loan process.

> As you know, ***<u>Countrywide/Bank of America did not originate the subject loan</u>*** (please refer to the loan documents provided under separate cover). **As the purchaser of a closed loan, Countrywide/Bank of America** is not responsible for any misunderstanding or lack of communication between the borrower and the originating entity….

> **<u>The owner of this loan is Fannie Mae, whose address is 13150 World Gate Dr., Herndon, VA 20170. Bank of America services the loan on behalf of the owner</u>**.

---

[13]     This letter is also misleading to the extent it refers to having been forwarded to "my attention for review and response", but yet it is not even signed and merely contains the generic typewritten phrase "Customer Service".

**Please note that a credit block was placed while the issues in your letter were addressed. However, as of the date of this letter, the block has been removed**. Further as a member of the credit granting community, Bank of America, like most creditors, relies on the accuracy and validity of the information obtained from the various reporting agencies. Therefore, **we will not remove the negative credit reporting** *from our customer's* **credit file**. *(Emphasis supplied).*

*See* attached Exhibit "**AA**". And a virtually identical letter dated **August 17, 2010** was received by Plaintiff's counsel on **August 23, 2010**.

129.

The BOA Defendants - and Defendant BAC in particular - violated the FDCPA on numerous occasions by misrepresenting the character, amount and legal status of the Plaintiff's debt when communicating to/with her. *See, e.g.*, 15 U.S.C. § 1692e(2).

130.

The BOA Defendants - and Defendant BAC in particular - violated the FDCPA by using unfair and unconscionable means to collect the debt owed by the Plaintiff, including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the applicable contractual documents or otherwise legally chargeable to the Plaintiff, as more fully set forth above.

131.

The BOA Defendants - and Defendant BAC in particular - violated the FDCPA by threatening to foreclose on the Plaintiff's home even though they had no present right to possession of the property and by threatening to take other

action prohibited by law. *See, e.g.*, 15 U.S.C. §§ 1692e(5) and 1692f(6).

132.

The BOA Defendants - and Defendant BAC in particular - violated the FDCPA by failing to accurately and fully state in communications to Plaintiff "the amount of the debt." *See, e.g.*, 15 U.S.C. § 1692g(a)(1).

133.

The BOA Defendants - and Defendant BAC in particular - violated 15 U.S.C. §§ 1692e and or 1692f by falsely and erroneously misrepresenting the character, amount and or status of the alleged debt(s) at issue in this case. *See, e.g.*, letters cited elsewhere herein.

134.

More specifically this includes the BOA Defendants' violation(s) of 15 U.S.C. § 1692e(8), which provides in relevant part as follows:

A debt collector may not use **any false, deceptive, or misleading representation or means** in connection with the collection of **any debt**. Without limiting the general application of the foregoing, the following conduct **is a violation** of this section:

(2) The false representation of--

(A) the **character, amount, or legal status of *any* debt**; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment,

attachment, *or sale of any property* or wages of any person **unless such action is lawful** and the debt collector or creditor intends to take such action.

(5) **The threat to take any action that cannot legally be taken or that is not intended to be taken**…

(8) **Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed**.

(10) The **use of *any* false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer**.

(11) **The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector**…

135.

Alternatively and or additionally, the BOA Defendants also violated 15 U.S.C. § 1692e by misrepresenting the legal status of the alleged debt when they knew or should have known that they were not then entitled to collect on same by virtue of its failure to comply with the other statutory legal requirements as detailed herein.

136.

Alternatively and or additionally, the BOA Defendants violated 15 U.S.C. § 1692g by failing to comply with the statute's requirements concerning the validation and dispute(s) of the alleged debt(s) at issue as well as the "five-day notice" FDCPA provision.

**(B)    STATE [GEORGIA] LAW CLAIMS**

## Count Six

### *Violations of the Georgia Fair Lending Act [O.C.G.A. § 7-6A-1 et seq.]*

137.

The BOA Defendants violated O.C.G.A. § 7-6A-1 *et seq*. ("Georgia Fair Lending Act") by applying/billing improper, unauthorized, premature, duplicative and or excess fees, assessments, interest and or charges in conjunction with the Loan(s)/Account(s) at issue in this case. *See*, for example, O.C.G.A. § 7-6A-3(3). Pursuant to § 7-6A-7, they are therefore liable to Plaintiff for any and all actual damages, including consequential, incidental, punitive and statutory damages equal to the recovery of two times the interest paid under the loan and forfeiture of interest, costs and reasonable attorney's fees.

## Count Seven

### *Breach of Contract*

138.

The BOA Defendants willfully, knowingly and intentionally breached the express terms of the parties' loan/mortgage agreement(s)/contract(s) in conjunction with the property and account(s) at issue in this litigation.

139.

The BOA Defendants willfully, knowingly and intentionally breached the implied terms of the parties' loan/mortgage agreement(s)/contract(s) in conjunction with the property and account(s) at issue in this litigation.

140.

Alternatively, the BOA Defendants negligently breached the terms of the loan agreements at issue.

141.

Additionally and or alternatively, the BOA Defendants willfully and or negligently breached the terms of the *Loan Modification Agreement* between themselves and Plaintiff.

142.

Additionally and or alternatively, upon information and belief, the BOA Defendants willfully and or negligently breached the terms of their servicer agreement(s) with Fannie Mae and or any other party with an ownership or other legal interest in the loan at issue.

143.

Additionally and or alternatively, the BOA Defendants willfully and or negligently breached the terms of the other directives, stipulations, requirements, etc. applicable to it in conjunction with the governing documents referenced *supra*., and or any other applicable directives to which they are bound.

144.

More specifically, for example, the BOA Defendants breached the contract(s) at issue by failing to competently, properly, timely and fairly service/administer Plaintiff's Escrow Account.

145.

More specifically, for example, the BOA Defendants breached the contract(s) at issue by negligently delegating the duties thereunder. *See, e.g.*, O.C.G.A. § 11-2-210.

146.

The BOA Defendants, by and through their agent(s) and attorney(s), willfully, intentionally, knowingly and repeatedly breached and failed to honor and follow-through with the express and repeated promises to correct Plaintiff's loan/account records and to ensure the correction of the erroneous and derogatory information as transmitted to and maintained by the CRA Defendants. *See* attached Exhibits.

147.

The BOA Defendants violated HAMP and the applicable contractual provisions to which it was bound by erroneously returning one or more "over-payments" to Plaintiff.

148.

The BOA Defendants willfully, knowingly and intentionally breached the express terms of the "***INTEREST-ONLY PERIOD FIXED RATE NOTE***" ("Note"), dated **01/31/2008**, by engaging in the actions and torts as described herein

149.

Additionally or alternatively, he BOA Defendants willfully, knowingly and intentionally breached the express terms of the "***Security Deed***" ("Deed" or "Security Instrument"), dated **January 31, 2008** by engaging in the actions and

torts as described herein.

## Count Eight

### *Breach of Implied Covenant of Good Faith/Fair Dealing*

150.

The BOA Defendants breached the [implied and or express] covenant of good faith and fair dealing with respect to the dealings between it/they and the Plaintiff in conjunction with the matters as described herein. *See, for example*, O.C.G.A. § 11-1-203.

## Count Nine

### *Negligence*

151.

Additionally or alternatively, the BOA Defendants were, at the very least, generally [and grossly] negligent with respect to its handling and servicing of Plaintiff's loan/account and other contractual duties and matters as described herein and wholly failed to timely, fairly and competently honor, fulfill, and carry out their duties and obligations, whether express or implied, associated therewith. *See, for example, Johnson v. Citimortgage, Inc.,* 351 F. Supp. 2d 1368 (N.D. Ga. 2004).

152.

The BOA Defendants' misfeasance arose in the context of the (non) performance of their contractual duties. And one or more of those duties arose independent of any contract between Plaintiff and the BOA Defendants.

Furthermore, Plaintiff's claims in this Count are ***not*** preempted by the FCRA. *Id*.

## Count Ten

### *Defamation-Slander-Libel*

### 153.

The BOA Defendants slandered, libeled and or defamed Plaintiff when they knowingly, intentionally and willfully made, issued, published or otherwise communicated false, inaccurate and misleading information in print, writing or otherwise to one or more third parties, including the Defendant CRAs and Radian Guarantee, which tended [and did] to injure her reputation and expose(d) her to public hatred, contempt, or ridicule. *See* O.C.G.A. §§ 51-5-1, 51-5-4 and or *Johnson*, cited *supra*.

### 154.

The BOA Defendants knew or should have known that the aforementioned information and or communications were false and or misleading and knew or should have known such communications would be likely to cause harm, injury, embarrassment, shame and or would otherwise have or cause other trouble and damage to Plaintiff. The BOA Defendants reported to credit reporting agencies that Plaintiff's account was delinquent even after the date of receipt of Plaintiff's written disputes regarding her account. *Id*.

### 155.

As explained in detail herein, the BOA Defendants' furnished false

information to a consumer reporting agency [and to Radian Guarantee] with malice or willful intent to injure Plaintiff to the extent it was made with knowledge that it was false or with reckless disregard of its truth and or for Plaintiff's interests. *Id.*

## Count Eleven

### *Unjust Enrichment*

156.

Additionally and or alternatively, the BOA Defendants have been unjustly enriched by virtue of the matters described herein, specifically including, but not limited to, the unlawful and or excessive application, levying and assessment of late fees, interest and other charges to Plaintiff's account. *See, for example*, O.C.G.A. §§ 9-2-7 and 51-1-1.

## Count Twelve

### *Conversion*

157.

Similarly, the BOA Defendants repeatedly converted Plaintiff's property [money] and committed the tort of conversion [and created a "chose(s) in action"] by virtue of the facts and matters described herein. *See for example*, O.C.G.A. §§ 44-12-20, 44-12-21, 9-2-3 and or 15 U.S.C. § 1666c.

## Count Thirteen

### *Theft by Conversion*

158.

The BOA Defendants converted or committed Theft by Conversion by

unlawfully and or fraudulently soliciting, obtaining and or exercising control over Plaintiff's property, pecuniary interests and or benefits/entitlements to payment(s)/reimbursement(s) and or failing to make a specified and lawful application/disposition of her funds by virtue of the facts and matters described herein. *See, for example*, O.C.G.A. §§ 16-8-2, 16-8-4, 51-10-1 and 44-12-20 *et seq.*

## Count Fourteen

### *Theft by Deception*

159.

The BOA Defendants committed 'Theft by Deception' by obtaining/obstructing access to Plaintiff's property or pecuniary interests in a deceitful means/manner with the intention of depriving her of same and or intentionally and deceptively promised the performance of services which they did not intend to perform or knew at the time would not be performed. *See, for example*, O.C.G.A. §§ 16-8-3.

## Count Fifteen

### *Violations of the Georgia Fair Business and Deceptive Trade Practices Act(s)*

160.

The BOA Defendants violated the *Georgia Fair Business Practices Act* and or *Deceptive and or Uniform Deceptive Trade Practices Act* by engaging in, facilitating and or failing to take reasonable steps to prevent, the actions related to the consumer transactions in the manner described herein. *See* O.C.G.A. §§ 10-1-

370 *et seq*. and 10-1-390 *et seq*.

161.

More specifically, the BOA Defendants (mis) represented that their services are/were of a particular standard or quality when they are/were not/of another; advertised services with an intent not to sell them as advertised and or engaged in [any] other conduct which created [a likelihood of] confusion and or of misunderstanding by Plaintiff. *See* O.C.G.A. §§ 10-1-372 and 10-1-393.

162.

The BOA Defendants, by or through their agents/attorneys, violated O.C.G.A. §§ 10-1-420 and or 10-1-421 in conjunction with its offering of services by making, publishing, disseminating, circulating, advertising and or and placing before the public [and Plaintiff] a brochure/circular/pamphlet/notice with the intent, design, or purpose not to sell or provide the services so advertised or upon the terms stated therein or otherwise communicated.

163.

Additionally and or alternatively, the BOA Defendants, by or through their agents/attorneys, violated O.C.G.A. § 10-1-421 by making false and or misleading statements or promises in the aforementioned materials which concerned "real or personal property or services, professional or otherwise, or concerning any circumstances or matter of fact connected with the proposed performance or

disposition thereof which is untrue or fraudulent and which is known or which by the exercise of reasonable care should be known to be untrue or fraudulent" [and upon which Plaintiff detrimentally relied].

164.

Plaintiff issued any applicable notices required to be given under the aforementioned statutes.

**Count Sixteen**

*Fraud - Deception*

165.

The BOA Defendants willfully and knowingly committed fraud and deception in the course of their actions and conduct as described in detail herein and are liable to Plaintiff for any actual, consequential and exemplary damages and costs and attorney's fees as a result, in an amount to be determined at trial. *See, for example,* O.C.G.A. § 56-6-1 *et seq*. Thus, for example, by failing to notify Plaintiff that they intended to hold or otherwise treat payments received by her any differently than before, or that they intended to report derogatory information to the CRAs as a result of the Modification - whether justified or not - the BOA Defendants committed fraud.

166.

The BOA Defendants committed fraud and or intentionally deceived and wrongfully induced and misled Plaintiff by virtue of the facts, transactions and

dealings described herein. Said fraud/deception/misrepresentation was either or both actual and or constructive and Plaintiff acted/relied to their detriment on such fraud/misrepresentation. *See* O.C.G.A. § 23-2-51(b) ["constructive fraud consists of any act of **omission or commission**, contrary to legal **or equitable** duty, trust, or confidence justly reposed, which is **contrary to good conscience** and operates to the injury of another"]; § 23-2-56 [fraud may occur by way of "signs or tricks, or through agents employed to deceive, or **by any other unfair way** used to cheat another"]; § 23-2-57 [slight circumstances may be sufficient to establish it] and § 23-2-52 [*'Misrepresentation as Legal Fraud'*].

167.

Alternatively or additionally, the BOA Defendants committed fraud and or intentional misrepresentation/deception by virtue of their silence and or failure to communicate or disclose material facts to Plaintiff, including those which, had they been disclosed, would have caused Plaintiff to change or alter their decision(s)/actions. *See* O.C.G.A. § 51-6-4(a). *See also* O.C.G.A. § 51-6-2(b) ["fraudulent **or reckless representation of facts** as true when they are not, if intended to deceive, **is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false**"]; *Oliver v. O'Kelley*, 48 Ga. App. 762, 173 S.E. 232 (1934); *accord, Adkins v. Lee*, 127 Ga. App. 261, 193 S.E.2d 252 (1972) ["any misrepresentation intended to deceive and

which does deceive is fraud, for which a party is entitled to a remedy at law"].

168.

Alternatively or additionally, the BOA Defendants committed fraud and or intentional misrepresentation/deception by virtue of affirmatively making the aforementioned false and misleading statements and promises.

169.

Additionally or alternatively, the BOA Defendants, either directly or through their agents violated O.C.G.A. § 33-1-9(a) by, for example, knowingly, willfully and or with reckless disregard making or aiding in the making of a false or fraudulent statement or representation of a material fact(s) or thing(s) in a written statement and or in connection with either the application for/receipt of government benefits and incentives which it received as a result of granting the Modification to Plaintiff and as otherwise discussed herein.

**<u>Count Seventeen</u>**

***Emotional Distress***

170.

As a result of their intentional, *willful*, extreme and outrageous conduct (and or with such wanton disregard for the consequences so as to give rise to a presumption of willfulness) and actions and or inactions described herein, each [all] of the named Defendants have caused Plaintiff emotional distress, anxiety, worry, mental anguish, humiliation, embarrassment and other emotional and or psychological injury(s) to her

general peace, happiness and well-being. *See, e.g.,* O.C.G.A. §§ 51-12-5 and 51-12-6.

171.

Alternatively/additionally, as a result of their *negligent* or grossly negligent extreme and outrageous actions and or inactions described herein, each [all] of the named Defendants have caused Plaintiff emotional [and physical/psychosomatic] distress, anxiety, worry, mental anguish, humiliation, embarrassment and other emotional and or psychological injury(s) to her general peace, happiness and well-being. *See, e.g.,* O.C.G.A. §§ 51-12-5 and 51-12-6.

## Count Eighteen

### Civil RICO

172.

Upon information and belief, the BOA Defendants violated O.C.G.A. § 16-14-1 *et seq.* - "*Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act*" - by virtue of the conduct as described herein.

## Count Nineteen

### General Liability

173.

Alternatively and or additionally, without waiving any other causes of action, Plaintiff is entitled to a legal remedy and right of recovery against each Defendant in conjunction with O.C.G.A. §§ 9-2-3 ["For every right there shall be a remedy"] and or 44-12-21 ["For every violation of an express or implied contract and for every injury done by another to one's person or property, the law gives a

right to recover and a remedy to enforce it"].

## Count Twenty

*Agency*

### 174.

Alternatively and or in addition to any and all other applicable statutes or laws, Plaintiff brings this action as a beneficiary [whether inversely or directly, as third party or otherwise] of one or more contracts pursuant to and in conjunction with O.C.G.A. § 9-2-20(b).

### 175.

Alternatively and or additionally, Plaintiff brings this action pursuant to and in conjunction with O.C.G.A. §§ 13-3-42 and or 51-12-30.

## Count Twenty-One

*Miscellaneous*

### 176.

Due to the BOA Defendants' failure to respond [and or timely respond] meaningfully in writing to Plaintiff's letters cited herein, some of which expressly cited the relevant statutes, all the facts, assertions, admissions against interest, etc. contained therein are deemed admitted. *See* O.C.G.A. §§ 24-3-36 and 24-4-23.

## V     INJUNCTIVE AND DECLARATORY [EQUITABLE] RELIEF

## Count Twenty-Two

*Injunction - Restraining Order*

### 177.

Plaintiff seeks and hereby respectfully requests that the Court issue an

injunction or *Temporary Restraining Order* in light of the immediate and irreparable injury, loss, and or damage that will or is likely to result from the BOA Defendants' actions without judicial intervention pursuant to O.C.G.A. §§ 9-5-1, 9-5-8, 9-11-65, 15 U.S.C. §§ 1635(g) and or 1691e(c).

### Count Twenty-Three

*Declaratory Judgment - Injunctive Relief*

178.

Pursuant to O.C.G.A. § 9-4-1 *et seq.*, 15 U.S.C. §§ 1635(g) and or 1691e(c), Plaintiff seeks and hereby respectfully requests that the Court issue a Declaratory Judgment respecting the actual controversy which exists between the parties in this case. Plaintiff submits that such judicial intervention is necessary to immediately settle at least part of the Parties' controversy(s) and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations between and among her and the Defendants.

Plaintiff seeks a Declaratory Judgment and or injunctive relief on the issue of the amount of payment(s) due, the application and apportionment of payments tendered, the issuance by the BOA Defendants of notices to Plaintiff regarding her loan and to require both BOA Defendants to cease issuance of adverse notices pertaining to payments on her account and to prohibit the CRA Defendants from reporting or maintaining any derogatory information pertaining to the account(s) at

issue or re-polluting her Reports with such information.

## VI    DAMAGES

### Count Twenty-Four

*(a)*    *Special/Actual Damages*

179.

In addition, and or consistent with the enumerated allegations as plead hereinabove, all Defendants are liable for, any and all actual/special, general, consequential and or other damages to which Plaintiff is entitled in law or equity in an amount to be determined by the trier(s) of fact. *See* O.C.G.A. §§ 13-6-1, 13-6-2, 51-12-1, 51-12-3 and 51-12-4.

*(b)*    *Consequential Damages*

180.

All Defendants are liable to Plaintiff for any and all consequential damages sustained in an amount to be proven at trial and or as determined by the enlightened conscious of a fair and impartial jury. *See* O.C.G.A. §§ 13-6-1, 13-6-2 and 51-12-3.

*(c)*    *General Damages*

181.

All Defendants are liable to Plaintiff for any and all general damages, which the law presumes to have flowed from the tortious acts described herein - and which may be recovered without proof of any amount. *See* O.C.G.A. §§ 10-1-399, 13-6-1, 13-6-2, 51-12-2 and 51-12-4.

*(d)*     ***Punitive/Exemplary Damages***

182.

All Defendants are liable to Plaintiff for exemplary or punitive damages by virtue of their intentional, wanton, malicious, egregious and or willful actions and inactions described herein. And the BOA Defendants are further liable for knowingly and or fraudulently entered into the contract(s) at issue with intent not to honor the duties and obligations thereunder and or to likewise deceive Plaintiff. *See* O.C.G.A. §§ 51-12-5, 51-12-6 and 51-12-30.

183.

Alternatively and or additionally, the BOA Defendants are liable to Plaintiff for punitive and or exemplary damages pursuant to O.C.G.A. § 51-12-51.

184.

In addition, and consistent with the their reckless, intentional, egregious, and or willful actions and inactions as enumerated herein, the BOA Defendants are liable for, punitive and or exemplary damages in accordance with 12 U.S.C. § 2605(f)(1)(B), 15 U.S.C. §§ 1640, 1681n(b), 1692k and or O.C.G.A. §§ 10-1-399 and or 51-12-5.1.

## **Count Twenty-Five**

***Attorney's Fees, Costs & Expenses***

185.

Consistent with the enumerated allegations as plead hereinabove, Plaintiff seeks,

and the BOA Defendants are liable for, any and all attorney's fees, costs and or expenses related to the claims asserted in this lawsuit by virtue of their blatant, unequivocal and egregious bad faith and stubborn litigiousness and continuing to put Plaintiff through unnecessary trouble and expense and essentially giving her no reasonable choice but to resort to litigation, despite the numerous and repeated good faith attempts by her to resolve the matter in a non-litigious manner. *See Johnson*, cited *supra*.

186.

Additionally and or alternatively, Defendants are liable to Plaintiff for all reasonable attorney's fees, costs and other expenses incurred in connection with this litigation due to Defendants' bad faith, stubborn litigiousness and blatant "so sue me" attitude, which has put Plaintiff to significant unnecessary trouble and expense. *See* O.C.G.A. §§ 13-6-11 and or 13-1-11, among any other applicable laws.

187.

Alternatively or additionally, the BOA Defendants are liable to Plaintiff for attorney's fees costs and expenses incurred or related to the claims asserted in this lawsuit pursuant to O.C.G.A. §§ 10-1-399 and or 51-12-5.1, 12 U.S.C. § 2605(f), 15 U.S.C. §§ 1640, 1681n(c), 1681o(c), 1691e(d), 1692k(3), 42 U.S.C. § 4012a and any other applicable statutes.

## **Count Twenty-Six**

*Interest*

188.

Plaintiff also seek interest in an amount to be determined at trial pursuant to O.C.G.A. §§ 7-4-15, 13-6-13 and or 13-1-11, among any other applicable laws.

**WHEREFORE**, Plaintiff prays for the following:

(a)   trial by a twelve (12) person jury;

(b)   actual damages [specific amount to be proven at trial];

(c)   consequential damages in an amount to be determined at trial;

(d)   general damages in an amount to be determined at trial;

(e)   statutory damages for each statutory violation as described herein in an amount to be determined at trial;

(f)   exemplary/punitive damages in an amount to be determined at trial;

(g)   reasonable attorney's fees, costs and expenses;

(h)   interest as allowed by law;

(i)   that the Court order BOA/BAC to conduct an *accurate* accounting of Plaintiff's loan, enjoin all Defendants from transmitting or reporting any derogatory or erroneous information pertaining to Plaintiff or her mortgage account and order it to correct its records in accordance with the facts herein; and

(j)   for any other such further relief as this Court or trier of fact deems just and proper.

Respectfully submitted this 15th day of December, 2010.

*(Signature on following page)*

s/ Auden L. Grumet, Esq.
Ga. State Bar No.: 314613
Attorney for Plaintiff
*The Law Office of Auden L. Grumet, LLC*

4503 West Sudbury Court
Atlanta, Georgia  30360
(770) 458-3845 (Tel)
(770) 458-9034 (Fax)
**auden@atlantalawyer.org**